UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN MOYA,

       Plaintiff,

v.

JEFFERSON CAPITAL
SYSTEMS, LLC,

       Defendant.
_____/

## Complaint

### I.   Introduction

1. This is an action for damages, brought by a consumer against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251 *et seq.*, and Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

### II.   Jurisdiction

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

### III.   Parties

3. Plaintiff Jonathan Moya is an adult, natural person residing in Kent County, Michigan. Mr. Moya is a "consumer" and "person" as the terms are defined and used in the

1

FDCPA. Mr. Moya is a "consumer," "debtor" and "person" as the terms are defined and used in the MCPA and MOC.

4. Defendant Jefferson Capital Systems, LLC ("JCS") is a Georgia limited liability company. The registered agent in Michigan for JCS is CSC-Lawyers Incorporating Service (Company), 601 Abbott Road, East Lansing, Michigan 48823. JCS has filed with the State of Michigan, an application for certificate of authority to transact business in Michigan for the stated purpose of "Debt Collections." JCS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. JCS is a "debt collector" as the term is defined and used in the FDCPA. JCS is a "regulated person" as the term is defined and used in the MCPA. JCS is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

### IV. Facts

5. In or about 2006, Mr. Moya registered to attend one or more classes at Corinthian Colleges, Inc. ("CCI"), a publicly traded corporation based in California that owned and managed a collection of for-profit colleges in the United States and Canada. In connection with that registration, CCI provided various text books to Mr. Moya. Mr. Moya registered to attend CCI and received the related text books for personal, family and household purposes. Any resulting obligation of Mr. Moya to pay money to CCI was a "debt" as the term is defined and used in the FDCPA, MCPA and MOC.

6. CCI has been investigated and sued repeatedly by various states in connection with CCI's allegedly deceptive business practices. CCI and its business practices currently are being investigated by the Consumer Financial Protection Bureau.

2

7. Mr. Moya timely cancelled his registration to attend CCI.

8. Mr. Moya did not use or alter the text books. Mr. Moya promptly tendered the text books back to CCI, but CCI refused to allow Mr. Moya to return the text books to CCI.

9. CCI later billed Mr. Moya for the text books which CCI refused to allow Mr. Moya to return.

10. Mr. Moya disputed owing money to CCI for the text books. Mr. Moya refused to pay money to CCI for the text books.

11. Mr. Moya continues to dispute owing money to CCI or to any other entity for the text books. Mr. Moya continues to refuse to pay money to CCI or to any other entity for the text books.

12. CCI charged off Mr. Moya's text book account.

13. CCI sold Mr. Moya's text book account.

14. Defendant Jefferson Capital Systems, LLC purportedly purchased Mr. Moya's charged-off CCI text book account. Upon information and belief, JCS paid less than five cents on the dollar for the account.

15. Mr. Moya's CCI text book account is no longer judicially enforceable by operation of the applicable statute of limitation. Stated differently, the alleged debt is time-barred.

16. JCS placed Mr. Moya's CCI text book account for collection with a company named Frontline Asset Strategies, LLC ("FAS").

17. Frontline Asset Strategies, LLC is a Minnesota limited liability company. FAS uses interstate commerce and the mails in a business the principal purpose of which is the

collection of debts. FAS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. FAS is a "debt collector" as the term is defined and used in the FDCPA. FAS is a "regulated person" as the term is defined and used in the MCPA. FAS is licensed (No. 2401002275) by the State of Michigan to collect consumer debts in Michigan. FAS is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

18. FAS placed multiple telephone calls to Mr. Moya in connection with efforts to collect the alleged debt for JCS.

19. On or about August 30, 2012, Mr. Moya spoke by telephone with a female FAS employee. The FAS employee stated that Mr. Moya owed $1,530.00, but that FAS could settle the debt for $944.00. Mr. Moya stated that he did not owe the debt. Mr. Moya asked the FAS employee to stop calling Mr. Moya during business hours because the calls were interfering with Mr. Moya's employment. Mr. Moya stated that he would review his records and call FAS back at a later time.

20. On of about September 4, 2012, Mr. Moya spoke by telephone with a male FAS employee. Mr. Moya stated that the he had not received anything in writing from FAS. Mr. Moya stated that the CCI account was being reported on his credit. Mr. Moya stated that he had cancelled his registration to attend CCI, but that CCI had refused to allow Mr. Moya to return the text books to CCI. Mr. Moya stated that under the circumstances, he did not owe any debt to CCI. In the ensuing conversation, the FAS employee made the following representations to Mr. Moya:

    a) FAS was recording the conversation.

    b)    CCI sold to JCS, Mr. Moya's text book account and related debt in the amount of $1,530.00.

    c)    JCS placed the account with FAS to collect the debt from Mr. Moya.

Mr. Moya expressly stated that he disputed owing the debt. Hearing that, the FAS employee replied:

    d)    You're a grown man! You're an adult! You took the books. You said you tried to return the books. But you still owe the money.

Mr. Moya demanded that FAS communicate to JCS and to the credit bureaus that Mr. Moya disputed the debt for the reason that Mr. Moya did not believe he owed the debt. Hearing that, the FAS employee replied:

    e)    No. I'm not gonna. If you want to dispute you can place it in a dispute letter.

Mr. Moya again demanded that FAS communicate to the credit bureaus that Mr. Moya disputed the debt. Hearing that, the FAS employee replied:

    f)    No. No. I'm not going to put anything in the bureaus like you're disputing it. If you want to dispute it, send us a letter telling us why you're disputing it.

21. FAS and its employee made the above-stated representations to Mr. Moya in connection with efforts by FAS and JCS to collect the alleged debt from Mr. Moya.

22. FAS and its employee made the above-stated representations to Mr. Moya for the animating purpose of inducing Mr. Moya to pay the alleged debt.

23. The FDCPA does not require the consumer to provide *any reason at all* in order to dispute a debt. *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234 (D. Haw. 2002); (*Mendez v. M.R.S. Assoc.*, 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004) (a consumer is entitled

5

to dispute the validity of a debt for a good reason, a bad reason, or no reason at all); *Whitten v. ARS National Servs. Inc.*, 2002 WL 1050320 *4 (N.D. Ill. May 23, 2002) (imposing a requirement that a consumer have a 'valid' reason to dispute the debt is inconsistent with FDCPA); *Castro v. ARS National Servs., Inc.*, 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000); *Frey v. Satter, Beyer & Spires*, 1999 WL 301650 (N.D. Ill. May 3, 1999); *DeSantis v. Computer Credit, Inc.*, 269 f.3d 159 (2nd Cir. 2001); *Mejia v. Marauder Corporation*, 2007 WL 806486 (N.D. Cal. 2007) (unlawful to suggest that proof of payment required for dispute).

24. Credit reporting by a debt collector constitutes an attempt to collect a debt. *See, e.g., Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993)(a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed, in part, to wrench compliance with payment terms from its cardholder"); *Matter of Sommersdorf*, 139 B.R. 700, 701 (Bankr.S.D. Ohio 1991); *Ditty v. CheckRite, Ltd.*, 973 F.Supp. 1320, 1331 (D.Utah 1997). Debt collectors frequently will threaten to harm the consumer's credit as a cost effective way to coerce payment of a small debt. However, Congress has placed limit on that collection tool

25. Two consumer protection laws, the FDCPA (regulating debt collection) and the Fair Credit Reporting Act ("FCRA") (regulating credit reporting) work together to empower the consumer to mitigate the harm that a debt collector can do to the consumer's credit.

26. The FDCPA makes it unlawful for a debt collector to communicate or threaten to communicate to any person credit information which is known or which should be known to be false, "including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

27. The FDCPA does not require the consumer to dispute the debt in writing *in order*

6

to invoke the protections of 15 U.S.C. § 1692e(8). *See, Brady v. The Credit Recovery Company, Inc.*, 160 F.3d 64 (1st Cir. 1998).

28. The FDCPA contains no limitation on the time during which a consumer may dispute a debt and trigger a debt collector's obligation to comply with 15 U.S.C. § 1692e(8).

29. The FCRA states that if a consumer has disputed a debt with the creditor or other furnisher of information (such as a debt collector), the furnisher may not report the debt to a consumer reporting agency unless it also discloses that the debt is disputed by the consumer. 15 U.S.C. § 1681s-2(a)(3). In turn, the consumer reporting agency must note in future consumer reports containing information regarding the account that the consumer disputes the debt.

30. It is unlawful for a debt collector to use "any false representation or deceptive means to collect or attempt to collect any debt...." 15 U.S.C. § 1692e(10).

31. It is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

32. When Mr. Moya verbally communicated by telephone to the FAS employee that Mr. Moya disputed the debt, FAS and its employee became obligated in any future communication with any third party (such as JCS or the consumer reporting agencies) regarding the debt, to also communicate to the third party that the debt is disputed. 15 U.S.C. § 1692e(8).

33. FAS and its employee repeatedly stated to Mr. Moya that FAS and its employee would not honor Mr. Moya's verbal dispute of the debt and thereby threatened to take action that FAS and its employee could not legally take or did not intend to take. The statement violated the FDCPA, 15 U.S.C. § 1692e(5), and Michigan law.

34. FAS and its employee made false representations to Mr. Moya regarding the rights

of a consumer to dispute a debt as afforded by the FDCPA and Michigan law. The false representations violated the FDCPA, 15 U.S.C. § 1692e(10), and Michigan law.

35. FAS and its employee made false representations to Mr. Moya regarding Mr. Moya's rights to dispute the debt. The false representations violated the FDCPA, 15 U.S.C. § 1692e(10), and Michigan law.

36. FAS and its employee falsely represented to Mr. Moya that Mr. Moya could not dispute the debt verbally and/or by telephone. The false representations violated the FDCPA, 15 U.S.C. § 1692e(10), and Michigan law.

37. FAS and its employee falsely represented to Mr. Moya that to dispute the debt, Mr. Moya was required to dispute the debt in writing. The false representation violated the FDCPA, 15 U.S.C. § 1692e(10), and Michigan law.

38. FAS and its employee wrongfully represented and wrongfully implied to Mr. Moya that FAS would not communicate to JCS or the consumer reporting agencies that Mr. Moya was disputing the debt unless Mr. Moya disputed the debt in writing with FAS. The representation violated the FDCPA, 15 U.S.C. § 1692e(5), and Michigan law.

39. The least sophisticated consumer upon hearing the false and wrongful representations made by FAS and its employee that FAS and its employee would not honor and communicate Mr. Moya's dispute to JCS or the credit bureaus, might be improperly coerced into paying a debt that the consumer does not owe, or is legitimately disputing, or that should be reported as disputed on the consumer's credit history. Stated differently the false and wrongful representations made by FAS and its employee in connection with efforts to collect the alleged debt from Mr. Moya were material misrepresentations.

40. FAS and its employee engaged in conduct the natural conduct of which was to harass, oppress and abuse Mr. Moya in connection with efforts to collect the alleged debt.

41. Upon information and belief, FAS communicated credit information regarding the debt to its client and/or other third parties without also communicating that the debt was disputed by Mr. Moya, and thereby violated the FDCPA and Michigan law.

42. FAS attempted to collect from Mr. Moya a debt that he did not owe.

43. JCS attempted to collect from Mr. Moya a debt that he did not owe.

44. The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

45. FAS, directly and indirectly, attempted to collect the alleged debt from Mr. Moya.

46. FAS, to increase its business and profits, has knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

47. The described acts and omissions of FAS and its employee done in connection with efforts to collect the alleged debt from Mr. Moya were done intentionally and wilfully.

48. FAS and its employee intentionally and wilfully violated the FDCPA, MCPA and MOC.

49. JCS, directly and indirectly, attempted to collect the alleged debt from Mr. Moya.

50. JCS is liable to Mr. Moya for the acts and omissions of FAS and the FAS

employees, done in connection with efforts to collect the alleged debt from Mr. Moya.

51. JCS, to increase its business and profits, has knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

52. The acts and omissions of JCS and its employees done in connection with efforts to collect the alleged debt from Mr. Moya were done intentionally and wilfully.

53. JCS and its employees intentionally and wilfully violated the FDCPA, MCPA and MOC.

54. As an actual and proximate result of the acts and omissions of FAS, JCS and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established by jury and at trial.

V.     **Claims for Relief**

### Count 1 – Fair Debt Collection Practices Act

55. Plaintiff incorporates the foregoing paragraphs by reference.

56. Defendant and FAS have violated the FDCPA. The violations of the FDCPA include, but are not necessarily limited to, the following:

    a) Defendant and FAS violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b) Defendant and FAS violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c) Defendant and FAS violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d) Defendant and FAS violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d) Such further relief as the court deems just and proper.

### Count 2– Michigan Collection Practices Act

57. Plaintiff incorporates the foregoing paragraphs by reference.

58. Defendant and FAS have violated the MCPA. The violations of the MCPA include, but are not necessarily limited to, the following:

a) Defendant and FAS violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive manner;

b) Defendant and FAS violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c) Defendant and FAS violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action

being taken or threatened, and (ii) the legal rights of a creditor or debtor;

d) Defendant and FAS violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

e) Defendant and FAS violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 445.257;

b) Treble the actual damages pursuant to M.C.L. § 445.257;

c) Statutory damages pursuant to M.C.L. § 445.257;

d) Equitable relief pursuant to M.C.L. § 445.257; and

e) Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257.

### Count 3 – Michigan Occupational Code

59. Plaintiff incorporates the foregoing paragraphs by reference.

60. Defendant and FAS have violated the MOC. The violations of the MOC include, but are not necessarily limited to, the following:

a) Defendant and FAS violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive manner;

b) Defendant and FAS violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c) Defendant and FAS violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action

being taken or threatened, and (ii) the legal rights of a creditor or debtor;

d)     Defendant and FAS violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt; and

e)     Defendant and FAS violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)     Actual damages pursuant to M.C.L. § 339.916(2);

b)     Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)     Statutory damages pursuant to M.C.L. § 339.916(2); and

d)     Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: September 6, 2012

*/s/ Phillip C. Rogers*
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com